187    209|
f221    446|

Louis Kreamer, Louis F. Kreamer, Louis F. Grebe and
W. D. Hunter, trading as Louis Kreamer & Company,
*v.* William Smith, Jr., and E. H. Smith, Appellants.

*Contract—Sale of stock of goods—Fraud.*

In an action to recover the purchase price of a stock of goods sold by
plaintiffs to the defendant, it appeared that in making the inventory on
which the purchase price was based defendant had the assistance of an
expert in the business, selected by himself, and acting in his interest.
Defendant alleged that fraud had been practised upon him in the sale.
There was evidence that the cost marks on a few articles of jewelry
had been raised, but the aggregate amounted to only about $2.00. It
was also alleged that cost marks on clothing had been raised, but there
was no proof as to the amount of the increase. It was also alleged that
worthless goods had been introduced into the stock before the inventory,
but there was nothing to show that any more was charged for these goods
than the agreement called for. It appeared that the defendant sold half
of the goods for a profit of about $200 over and above the half of the in-
ventory. The evidence as to the value of the remainder of the goods was
conflicting. *Held*, that it was not error to direct a verdict for the plaintiffs.

Argued April 27, 1898. Appeal, No. 103, Jan. T., 1898, by
defendants, from judgment of C. P. Cumberland Co., May T.,
1897, No. 685, on verdict for plaintiffs. Before STERRETT, C. J.,
McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover the purchase price of a stock of mer-
chandise. Before BIDDLE, P. J.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiffs.

Verdict and judgment for plaintiffs for $2,211.30. Defend-
ants appealed.

*Error assigned* was in giving binding instructions for plain-
tiffs.

*George Edward Mills* and *W. F. Sadler*, for appellants.—Un-
der the evidence of the defendants there was proof of a deliber-
ate attempt to conceal the real value of the goods to be sold, the
knowledge of the truthfulness of which was in the exclusive
possession of the plaintiffs' indorser, W. A. Lutz, and to the

benefit of which the defendants were entitled before the jury: Fisher v. Worrall, 5 W. & S. 478; Cornelius v. Molloy, 7 Pa. 293; Bower v. Fenn, 90 Pa. 359; Land and Imp. Co. v. Mendinhall, 4 Pa. Superior Ct. 398.

There is no presumption of law that Smith must have known what he was buying or that it was his duty to do so. He can still show he was defrauded: Kinzer v. Mitchell, 8 Pa. 64; Resh v. Bank, 93 Pa. 397; Webb Co. v. Dienelt, 133 Pa. 585; Braunschweiger v. Waits, 179 Pa. 47; Sutton v. Morgan, 158 Pa. 214; Huffstetter v. Buzett, 32 Ind. 293; Picard v. McCormick, 11 Mich. 68; Weber v. Weber, 47 Mich. 569; Mead v. Bunn, 32 N. Y. 275; Schwenk v. Naylor, 102 N. Y. 683; Roberts v. Plaisted, 63 Me. 335; Savage v. Stevens, 126 Mass. 207; Linington v. Strong, 107 Ill. 302.

*John W. Wetzel,* with him *Conrad Hambleton,* for appellee.— If the purchaser investigates for himself, and nothing is done to prevent his investigation from being as full as he chooses, he cannot say that he relied on the vendor's representations: Farrar v. Churchill, 135 U. S. 615; Farnsworth v. Duffner, 142 U. S. 47; Ludington v. Renick, 7 West Va. 273; Brotherton Bros. v. Reynolds, 164 Pa. 140; Negley v. Lindsay, 67 Pa. 217.

OPINION BY MR. JUSTICE MITCHELL, July 21, 1898:

The defendant, E. H. Smith, bought with ample opportunity to investigate the condition of the goods, and to ascertain their value. In making the inventory on which the purchase price was based he had the assistance of an expert in the business, selected by himself, and acting in his interest. Prima facie, therefore, it was a case for the application of the ordinary rule of caveat emptor. Nevertheless it may be conceded that if he had subordinated his own judgment to that of his vendor, and the latter put himself in a position of confidence, the defendant may show that fraud or imposition was practised upon him. But the evidence under such circumstances ought to be clear.

The items of fraud relied upon by defendants are seven in number. The first three are that the cost marks on the jewelry were changed and made higher, and also on certain umbrellas and hats. The sum total of jewelry in the inventory was $8.79, the alleged overcharge in the umbrellas amounted to $1.83 and in the

hats to forty-five cents.   It was admitted by Smith himself on the stand that the vendor Lutz offered to take back the jewelry and the umbrellas if Smith was dissatisfied.   Fourth and fifth, that the cost marks were erased and new ones substituted on a number of suits of clothing, and new tags were put upon some pantaloons.   An explanation was given by Lutz of why this was done, on account of a change in the cost mark used in the store, but with explanation or without it, no proof was made by defendants of how much the alleged increase in the cost marks amounted to.   Sixth and seventh, that a dozen suits of clothes were found to be odd and not matched, and that a lot of summer goods mostly worthless were brought into the store from Lutz's garret the evening before the inventory was made.   Here again the evidence fails to show that any more was charged for these goods than the agreement called for.   On the contrary, Lutz testified without contradiction that the prices for the broken suits were fixed by himself and Gilbert, defendant's expert, in Smith's presence, and as to the summer goods Smith himself testified that " Lutz thought ten per cent reduction would be a fair price for them, and we accepted his offer."

These were all the items of complaint that the ingenious and energetic counsel of defendants could succeed in putting together.   The purchase price of the whole stock in the store was $2,200.   Smith went into possession and made sales which he testified amounted (apparently up to the time of trial) to $1,300, and that " according to Mr. Lutz there is about eleven hundred dollars there yet, but according to Mr. Kronenberg and Heffelfinger " (experts who had made a subsequent inventory for defendants), " about three hundred dollars."   This would seem to indicate that on a sale of about one half of the inventory there had been a profit of $200, or even allowing for some replenishing of stock rather vaguely testified to, that at least there had been no loss.   In view of this testimony, of the insignificant amount of the alleged alterations in cost marks, the failure to show any loss on the specific goods complained of, and the general circumstances of the sale, the learned judge below at the end of the trial reached the conclusion that a finding of fraud or deceit could not be sustained, and accordingly directed a verdict for the plaintiffs.   We have not been convinced that he was wrong in so doing.   The defendant may have made an

improvident bargain in buying a business with which he had no
practical acquaintance, but he had not shown that he was de-
frauded.

Judgment affirmed.